UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KIRTSEN KISSINGER-CAMPBELL,**

    **Plaintiff,**

vs.                                              Case No. 8:08-CV-568-T-27TBM

**C. RANDALL HARRELL, M.D., P.A.,
and C. RANDALL HARRELL, M.D.,**

    **Defendants.**

_____/

## DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND ALTERNATIVE MOTION FOR A NEW TRIAL; REQUEST FOR BRIEFING SCHEDULE; AND MEMORANDUM IN SUPPORT

Defendants, C. RANDALL HARRELL, M.D., P.A. and C. RANDALL HARRELL, M.D., by and through their undersigned counsel, hereby renew their motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. Alternatively, Defendants conditionally move for a new trial pursuant to Fed. R. Civ. P. Rule 59 if the Rule 50(a) motion is denied.

Defendants move for entry of an Order permitting Defendants to file supporting memoranda of law within 15 days following the filing of the trial transcript which has already been ordered from the Court Reporter and which is expected to be filed within 30 days from June 10, 2009.

## LOCAL RULE 3.01(g) CERTIFICATION

After due consultation required by Local Rule 3.01(g), Plaintiff opposed Defendants' request for permission to file formal memoranda in support of the Rule 50 and 59 motions within 15 days after said transcript is filed by the court reporter. Plaintiff maintains the memoranda must accompany all motions but this Court can otherwise direct. A transcript has been Ordered and should inform the Court's rulings.

## MEMORANDUM

Rule 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment — or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged — the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

The jury rendered a verdict in favor of Plaintiff on June 4, 2009 as to the tortious interference claims. The jury returned a defense verdict on the retaliation claims. Although this Court denied summary judgment and Defendants' Rule 50(a) motions, it retains the power to grant a Rule 50(b) motion. A jury verdict is not entitled to "the benefit of unreasonable inferences, or those at war with the undisputed facts."

AlphaMed Pharms. Corp. v. Arriva Pharms., Inc., 432 F. Supp. 2d 1319, 1333 (S.D. Fla. 2006), aff'd, 294 Fed. Appx. 501 (11th Cir. Fla. 2008).

The jury rendered a general verdict as to both the MyChoice and Medi-Weightloss positions. If any essential element is lacking as to either position, the verdict is infirm. Moreover, if only one of the two claims is supported by sufficient evidence, the damages award cannot stand. Hickson Corp. v. Norfolk S. Ry. Co., 260 F.3d 559 (6th Cir. 2001).

Under Florida law, the elements of tortious interference with a business relationship are: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994). A business relationship need not be evidenced by a contract, but it generally requires "an understanding between the parties [that] would have been completed had the defendant not interfered." Id. See ISS Cleaning Servs. Group, Inc. v. Cosby, 745 So. 2d 460, 462 (Fla. 4th DCA 1999) ("Cosby failed to present competent substantial evidence of an actual and identifiable agreement between Controlled Services and himself which in all probability would have been completed had the alleged interference not occurred. Thus, the trial court erred in denying appellants' motion for a directed verdict on Cosby's tortious interference claims").

# ISSUES TO BE ARGUED IN SUPPORT OF RULE 50(b) RELIEF

**My Choice Medical**

1. There was no evidence from which the jury could have reasonably concluded that Plaintiff was or would have been offered employment by MyChoice in the absence of any alleged interference by Defendants as required by Cosby.

2. Donielle DiTota had no power to hire or fire employees of MyChoice and was not competent to and did not testify that MyChoice would have hired Plaintiff if it was free to do so in April 2007.

3. There is no evidence that Defendants made a false or unjustified statement to Vince Trapasso in April 2007 or employed improper means. True statements by a defendant with or without a privilege may not be the basis for an action for tortious interference with a prospective contractual relation. See Delloma v. Consolidation Coal Co., 996 F.2d 168, 172 (7th Cir. 1993).

**Medi Weight Loss**

4. There was no evidence from which the jury could have reasonably concluded that Plaintiff was or would have been offered employment by Medi Weight Loss in the absence of any alleged interference by Defendants as required by Cosby.

5. There was no evidence of any kind that Doctor Zbella had any communication with any Defendant about Plaintiff's job search before or after Plaintiff's alleged second interview with him.

6. Eva Gamaras' testimony was not legally sufficient evidence of tortious interference. Ms. Gamaras was called by Plaintiff to establish Defendants' alleged retaliatory motive beginning in August 2007. Nothing in Ms. Gamaras' testimony shows

that Harrell knew whether MyChoice or Medi-Weightloss established an advantageous relationship with Plaintiff (See attached excerpts from Ms. Gamares' testimony provided by the Court Reporter). There was no testimony or evidence of any kind that Medi-Weightloss sought a reference from Harrell. Nor was there evidence that Harrell's comments, if any, played any role in the application process. Moreover, Plaintiff had two interviews and there is no assertion that Harrell was aware of either interview before or after they took place or did anything to prevent an offer from being made to Plaintiff.

7. In Plaintiffs' determined effort to prove retaliation, Gamaras testified that Harrell said to her in January 2008, "this is a small industry and that he would make sure that she would never work in the industry again" (p. 184). However, it is an undisputed fact that Plaintiff was then in the industry in January 2008. Gamaras' continued:

> Q. Okay. And did he relate to you why he didn't want her working in this small industry again?
>
> A. <u>Just that he was upset about what she was doing as far as the lawsuit</u>.

(P. 184, lines 184) (emphasis added). A motive to retaliate expressed in January 2008 based on a suit first served in June 2007 means that Harrell had no motive to exclude Plaintiff from the industry before June 1, 2007. And the jury exonerated Defendant of retaliation.

8. Plaintiff's counsel realized these answers were contrary to undisputed facts and tried again:

> Q. Did there come a time where – and just so we're clear, <u>did he give you any of the specifics</u> of the –the – of how he was going to make sure or what he was

> doing to make sure that she would never work in this small industry again?

(Page 184) (emphasis added). This question, once refined, called only for a yes or no answer? The question was not answered. And such an answer was asked for as of January 2008 at a time when Plaintiff was working in the industry.

9. Instead of directly answering the question asked, Ms. Gamaras answered:

> A. Well, I know that he had told me that she had gotten **a** job or – she had gotten **a** job at the Medi weight loss clinic or was seeking **a** position there and <u>he made sure that she didn't get it</u>. At that point I wasn't aware that Kirtsen was looking for any position at all. I thought she was doing real estate that she had did in her past.

(Page 184-85) (emphasis added). No follow-up questions were asked.

10. The volunteered statement by Ms. Gamaras that "he made sure that she didn't get it" does not create a reasonable inference of tortious conduct needed to support a verdict against Defendants regarding the Medi-Weight Loss position. Ms. Gamaras' testimony is incoherent at best. Her quoted answer contains three inconsistent scenarios in the January 2008 conversation: either that Plaintiff had "gotten **a** job" (such as MyChoice); she had gotten **a** job at the Medi weight loss clinic"; or was seeking a position there. Without any differentiation of her inconsistent scenarios, Ms. Gamaras states Harrell said "he made sure she didn't get it." Ms. Gamaras did not identify "it" and Plaintiff did not follow up to make the record clear. Defendants are entitled to judgment as a matter of law. There is a one-third possibility that Defendant Harrell was referring to Medi-Weight Loss even if he said that "he made sure that she didn't get it." A mere possibility is not proof by a preponderance of the evidence. Two

claims were tried and there is only one "it."  Which one did Harrell inculpate himself on? Speculation is not a sufficient basis for a verdict.

11. Ms. Gamaras did not state that Harrell admitted that he caused the job offer from Medi Weight Loss to be rescinded – which was Plaintiff's actual theory of the case. Assuming somehow that Harrell knew that Plaintiff applied with Medi Weight Loss, would he have risked not one but two interviews and a job offer before making any move to interfere? The proof must show that Plaintiff would have been hired by Medi Weight Loss but for Defendants' actions. There is no proof. Defendants are entitled to judgment as a matter of law as to the Medi-Weight Loss claim

12. Plaintiff worked at Medi Weight Loss in September 2007 on a project basis. There was no admission of interference by Harrell as to the Medi Weight Loss position filled in May or early June 2007.  This verdict was the product of conjecture and surmise and improper evidence that was ruled inadmissible and struck.

**Emotional Distress Damages Must be Struck**

13. There was no evidence to support a finding of emotional distress damages based on the "guilt" Plaintiff felt as a mother from taking a substitute job. A plaintiff who voluntarily accepts a position that requires travel cannot bootstrap such a job into a claim for mental anguish. Damages in a tort action must flow directly from Defendants' actions (the alleged job losses) not from Plaintiffs voluntary counter-response to said actions. Under Florida law, recoverable damages include "all damages which are a natural, proximate, probable or direct consequence of the act, but do not include remote consequences." AlphaMed Pharms. Corp. v. Arriva Pharms., Inc., 432 F. Supp. 2d 1319, 1344 (S.D. Fla. 2006), aff'd, 294 Fed. Appx. 501 (11th Cir. Fla. 2008).  Assume

Plaintiff mitigated her damages by accepting a position as a truck driver and then suffered an accident on the road. Would Defendant be liable for damages from said accident? Causation of damages must be direct not indirect. Plaintiff has not shown proximate causation as a matter of law.

## ISSUES TO BE ARGUED IN SUPPORT OF RULE 59 RELIEF

1. The verdict is against the great weight of the evidence as to the Medi Weight Loss and My Choice Claims under Cosby. "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great, not merely the greater weight of the evidence." Redd v. City of Phenix City, Ala., 934 F.2d 1211, 1215 (11th Cir. 1991).

2. The emotional distress award should be remitted to zero for the reasons explained above. Causation must be direct, not remote. The jury could not have awarded mental anguish damages on the MyChoice claim since it was Plaintiff's choice to apply to a job that required travel.

3. Plaintiff should have to elect between relief on the MyChoice and Medi-Weightloss Claims. Plaintiff cannot hold two jobs at once and cannot receive a double recovery. Hickson Corp. v. Norfolk S. Ry. Co., 260 F.3d 559 (6th Cir. 2001).

4. If the verdict cannot be sustained on both claims of interference, the award of damages must be tossed.

5. Even If the verdict as to MyChoice is sustained, the damages should be remitted. MyChoice paid Plaintiff less than $30,000 per year and Plaintiff worked at MyChoice from August 2007 until December 2008. No emotional distress damages

could be associated with the MyChoice position as this was Plaintiff's job preference in April 2007.

6. The jury's evaluation of Ms. Gamaras' credibility and thus the verdict as a whole was improperly affected by the erroneous admission, over objection, of Plaintiff's state of mind evidence (e.g., "I felt good," "I suspended my job search") which improperly communicated to the jury that she was offered a position by Medi-Weightloss which Plaintiff knew she could not state directly. T. Harris Young & Assoc., Inc. v. Marquette Electronics, Inc., 931 F.2d 816 (11th Cir. 1991).

7. The jury verdict should also be set aside as a result of misconduct of Plaintiff's counsel. Counsel for Plaintiff clearly elicited hearsay testimony from Plaintiff and Joe Barbara plainly barred by this Court's *in limine* ruling as to hearsay issues. Although the objections were sustained and testimony was stricken, the jury got the message, albeit the very one it was not supposed to receive. There were countless motions to strike necessitated by the misconduct and the cumulative effect presumably caused the jury to think the Court was withholding vital evidence from it.

8. Plaintiff and Joe Barbara dated for a lengthy period and resided together in July and August 2007 according to Plaintiff's trial testimony, well after Plaintiff was not hired by Medi Weight Loss. Plaintiff shared a laptop with Barbara once she moved in with Barbara. Plaintiff called Barbara in an effort to corroborate that Plaintiff expected to go to work for Medi Weight Loss. Barbara's testimony did not corroborate anything of value. The Court struck much of Barbara's testimony.

9. If anything, Barbara's time-line as to when Medi-Weightloss stopped communicating with Plaintiff (after Plaintiff moved in and shared his computer),

completely exonerates Defendants and shows that no start date was given. Interviews in May would not lead to a start date in July 2007. Moreover, the jury rejected any retaliation claim.

10. The verdict is tainted by the erroneous admission of evidence, the exclusion of evidence improperly elicited, and the spillover effect of the retaliation evidence ("going after her character") which was irrelevant to claims arising before June 1, 2007. See Broaddus v. Florida Power Corp., 145 F.3d 1283 (11th Cir. 1998) ("FPC also contends that the jury's consideration of Broaddus's ADEA claim was improperly tainted by the medical evidence presented in his ERISA claim. FPC asserts that the prejudice resulting from the medical evidence was compounded by the district court's failure to properly instruct the jury on the relevance of this evidence, or lack thereof, when the jury interrupted its deliberations to inquire of the court how it should regard the ERISA-related evidence. We agree with FPC, and for this reason we order a new trial.").

11. Indeed, this Court cited Harrell's supposed comments to Joe Barbara and Ms. Gamaras (which were motivated by the lawsuit) as proof of malice for the tortious interference claims. Relevant evidence of malice must precede the interference, not arise thereafter.

12. The verdict is tainted and a new trial should be ordered on the tortious interference claims.

**WHEREFORE,** the Court should adopt the Briefing schedule proposed herein so that both parties and the Court will have the benefit of the trial transcript in making post-trial rulings in granting relief from this verdict.

Respectfully submitted,

/s/ Craig L. Berman
Craig L. Berman, Esq.
BERMAN LAW FIRM, P.A.
111 Second Avenue, N.E., Suite 706
St. Petersburg, FL 33701
Phone: (727) 550-8989
Fax: (727) 894-6251
Fla. Bar No. 068977
cberman@tampabay.rr.com

**ATTORNEY FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 11, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Wilfried Florin.

/s/ Craig L. Berman
Attorney