UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIRTSEN KISSINGER-CAMPBELL,

    Plaintiff,

vs.                                                                 CASE NO. 8:08-cv-568-T-27TBM

C. RANDALL HARRELL, M.D., P.A.,
and C. RANDALL HARRELL, M.D.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are: (1) Defendants' Amended Renewal of Its Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial and Request for Briefing Schedule (Dkt. 93);[1] (2) Defendants' Amendment to Its New Trial Motion and Request for Evidentiary Hearing (Dkt. 98); and Defendants' Motion to Issue Subpoenas and Conduct Discovery in Support of Their Application for a New Trial (Dkt. 100), to which Plaintiff has responded in opposition (Dkts. 99, 107). On consideration, Defendants' motions are DENIED.

### *Background*

Plaintiff Kirtsen Kissinger-Campbell, a former employee of Defendants C. Randall Harrell M.D., P.A. ("Harrell, P.A.") and C. Randall Harrell, M.D. ("Harrell"), sued Defendants asserting claims of retaliation in violation of the Florida Private Whistleblower's Act ("FPWA"), Fla. Stat.

---

[1] A June 30, 2009, order (Dkt. 97) denied Defendants' request for a briefing schedule and directed Plaintiff to respond in accordance with applicable rules to Defendants' Amended Renewal of Its Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial.

§ 448.01 *et seq.* (Count I) and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count II) and claims of tortious interference with a business relationship (Counts IV and V).[2] The FPWA claim was dismissed pursuant to the parties' stipulation.[3] Following a four-day jury trial, the jury returned a verdict in favor of Defendant Harrell, P.A. on the FLSA claim. On the tortious interference claims, the jury returned a verdict against both Defendants, awarding damages of $150,000. On June 16, 2009, judgment was entered (Dkt. 88) pursuant to the verdict.

Defendants renew their motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) and contend that the evidence at trial was insufficient to support the verdict on Plaintiff's claims for tortious interference with a business relationship. Alternatively, Defendants request a new trial pursuant to Fed. R. Civ. P. 59 on various grounds, including the weight of the evidence, erroneous evidentiary rulings, and misconduct of counsel. Finally, Defendants' Amendment to Its New Trial Motion and Request for Evidentiary Hearing[4] (Dkt. 98) and Defendants' Motion to Issue Subpoenas and Conduct Discovery in Support of Their Application for a New Trial (Dkt. 100) request a new trial on the ground of newly discovered evidence and seek leave to conduct post-judgment discovery in support of their request for a new trial.

## *Standard*

Under Rule 50(b), a party may renew its motion for judgment as a matter of law after the jury

---

[2] The Complaint does not include a Count III.

[3] *See* Dkt. 78; Dkt. 103 at 169-172.

[4] Judgment was entered on June 16, 2009 (Dkt. 88), and Defendants' Amendment to Its New Trial Motion and Request for Evidentiary Hearing was filed on July 8, 2009, *i.e.*, more than ten days after entry of judgment. *See* Fed. R. Civ. 50(b) ("A motion for a new trial must be filed no later than 10 days after the entry of judgment."). However, when justice so requires, a district court may consider grounds raised in a tardy amendment to a timely motion for a new trial. *See Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1086 (11th Cir. 1987).

has returned a verdict. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1251 (11th Cir. 2007). The motion must be based upon grounds identical or closely related to the grounds upon which the movant sought judgment as matter of law before the case was submitted to the jury. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) ("[A]ny renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) . . . prior to the case being submitted to the jury."); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir. 1998) (renewed motion must be based upon grounds "closely related" to grounds argued in motion under Rule 50(a) before submission to jury); *Exxon Shipping Co. v. Baker*, --- U.S. ---, --- n.5, 128 S. Ct. 2605, 2617 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."). The rule precluding relief under Rule 50(b) based upon newly raised grounds "ensures that opposing counsel will not be ambushed or sandbagged regarding the sufficiency of the evidence adduced at a point in the trial proceedings when it is too late to address possible insufficiencies." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d at 903 (internal quotation marks and citation omitted).

Judgment as matter of law is appropriate if the opposing party has been fully heard on an issue and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1177 (11th Cir. 2005). In ruling on a Rule 50 motion, the court must draw all reasonable inference in favor of the nonmoving party and may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving

party that the jury is not required to believe." *Reeves*, 530 U.S. at 150 (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, at 299 (2d ed. 1995)). However, "the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000). There must be a "substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions" in order to deny a motion for judgment as a matter of law. *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995).

Pursuant to Rule 59, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A party may seek new trial on the grounds "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). A motion for a new trial should be granted when "'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). However, "'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence.'" *Lipphardt*, 267 F.3d at 1186 (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d at 1556). Additionally, a motion for a new trial may be based on newly discovered evidence. *La Fever, Inc. v. All-Star Ins.*

*Corp.*, 571 F.2d 1367, 1368 (5th Cir. 1978).[5] However, the motion should not be granted unless "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *La Fever*, 571 F.2d at 1368. Resolution of a motion for a new trial is committed to the discretion of the trial court. *Montgomery v. Noga*, 168 F.3d 1282, 1296 (11th Cir. 1999).

## *Discussion*

Under Florida law, the elements of a claim for tortious interference are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *see also KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004).

Although "[a] protected business relationship need not be evidenced by an enforceable contract," it "must afford the plaintiff existing or prospective legal or contractual rights." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994); *cf. Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152 (11th Cir. 2001) (noting that Florida courts have not always required legal rights). The plaintiff must demonstrate a relationship with a particular party, rather than a relationship with the general business community. *Dunn v. Air Line Pilots Assoc.*, 193 F.3d 1185, 1191 (11th Cir. 1999) (citing *Ethan Allen, Inc.*, 647 So. 2d at 815). Thus, the essential

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

5

question with respect to a prospective business relationship is whether there existed "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc.*, 647 So. 2d at 814; *see also ISS Cleaning Servs. Group, Inc. v. Cosby*, 745 So. 2d 460, 462 (Fla. 4th DCA 1999).

Defendants' chief contention is that Plaintiff failed to present substantial evidence that Plaintiff (Dkt. 93 at 4) "was or would have been offered employment" with My Choice Medical, Inc. ("My Choice") or Medi Weight Loss, Inc. "Medi Weight Loss") and therefore no jury could reasonably conclude that Defendants interfered with a prospective business relationship between Plaintiff and either entity.

As to My Choice, Plaintiff presented evidence at trial that (1) during her employment with Defendants, Plaintiff was a point of contact[6] between Defendants and My Choice and worked closely with representatives of My Choice; (2) in April, 2007, shortly after Plaintiff left Defendants' employment, Leeann Green (a representative of My Choice in Florida who resigned around the time that Plaintiff began her search for a new job) recommended Plaintiff to Donielle DiTota (My Choice's office manager) for a position as a My Choice representative;[7] (3) Plaintiff called DiTota to express her interest in employment as a My Choice representative in Florida and submitted a resume,[8] which "kind of . . . got things moving";[9] (4) DiTota, who described this period as one

---

[6] *See* Court's Exh. 2; Court's Exh. 1 at 8. The parties stipulated (Dkt. 103 at 4) to the admission of the videotaped deposition of Donielle DiTota without a simultaneous transcription at trial.

[7] *See* Court's Exh. 2; Court's Exh. 1 at 23, 32.

[8] *See* Court's Exh. 2; Court's Exh. 1 at 9, 23, 32.

[9] Court's Exh. 2; Court's Exh. 1 at 33. Despite a conflict in the evidence as to the existence of a position as Florida representative for My Choice when Plaintiff submitted her resume, the jury could reasonably resolve this conflict in Plaintiff's favor.

"when we were trying to hire [Plaintiff],"[10] passed on Plaintiff's resume to My Choice's human resources department or to her boss Vince Traposso,[11] who was a part-owner[12] (and perhaps also head of the human resources department[13]) of My Choice and was responsible for the hiring decision; (5) in a telephone conversation initiated by Harrell (the existence of which was corroborated to some extent by Harrell's testimony[14] and the testimony of Scott McAuley, Defendants' office administrator[15]), Harrell "made it **very clear**, that employing [Plaintiff] would be breach of contract";[16] (6) My Choice declined to hire Plaintiff;[17] (7) Harrell admitted to Eva Gamaras, a "surgical technologist" at his clinic,[18] that he prevented Plaintiff from obtaining employment at My Choice and Medi Weight Loss;[19] (8) Plaintiff received no response to her application until a few months later when DiTota explained to Plaintiff that My Choice's contractual obligations to Defendants prevented My Choice from hiring Plaintiff;[20] (9) a few months later, DiTota again

---

[10] Court's Exh. 2; Court's Exh. 1 at 33.

[11] *See* Court's Exh. 2; Court's Exh. 1 at 22-23, 33.

[12] *See* Court's Exh. 2; Court's Exh. 1 at 14-15.

[13] *See* Court's Exh. 2; Court's Exh. 1 at 22-23.

[14] *See* Dkt. 102 at 144-51, 158-59, 193-95, 211-13.

[15] *See* Dkt. 102 at 51; *cf.* Fed. R. Evid. 801(d)(1)(A).

[16] Pl. Exh. 57; *see also* Court's Exh. 2; Court's Exh. 1 at 11, 23-28.

[17] *See* Court's Exh. 2; Court's Exh. 1 at 33.

[18] Dkt. 101 at 182.

[19] *See* Dkt. 101 at 189-90, 231-32.

[20] Pl. Exh. 57.

recommended Plaintiff for a position as a My Choice representative;[21] and (10) in part as a result of a change in ownership at My Choice,[22] My Choice then hired Plaintiff as a My Choice representative.[23] From this and the other evidence introduced at trial, including Plaintiff's qualifications and DiTota's opinion of those qualifications, a rational jury could find that My Choice would have hired Plaintiff around April, 2007, if Harrell had not interfered.

As to Medi Weight Loss, Plaintiff presented evidence at trial that (1) after being informed by an employee at Medi Weight Loss of an opening,[24] Plaintiff had an interview (or two interviews) with Dr. Edward Zbella in mid-May or late May, 2007, at his office in Clearwater,[25] spoke with him by telephone "a couple of times," and gave him her resume;[26] (2) after meeting with Dr. Zbella, Plaintiff was excited and stopped her job search, not resuming the search until mid-June;[27] (3) following Plaintiff's departure from Defendants' employment on April 2, 2007, Harrell "on numerous occasions" told Eva Gamaras that Plaintiff was using contacts made at Defendants' clinic to find employment elsewhere;[28] (4) Harrell told Gamaras that Plaintiff was using the contacts in an

---

[21] *See* Court's Exh. 2; Court's Exh. 1 at 14.

[22] *See* Court's Exh. 2; Court's Exh. 1 at 14-16.

[23] *See* Dkt. 103 at 46.

[24] Dkt. 103 at 41; *cf.* Dkt. 104 at 140 (noting the absence of objection to the testimony); Dkt. 103 at 48 (Plaintiff's testimony that in October, 2007, the same Medi Weight Loss employee helped Plaintiff obtain a temporary position for Plaintiff with Medi Weight Loss's corporate office.).

[25] *See* Dkt. 103 at 39-42.

[26] Dkt. 103 at 41.

[27] *See* Dkt. 103 at 41, 43-44.

[28] Dkt. 101 at 188.

8

effort to obtain employment at My Choice and Medi Weight Loss in particular[29] and that Plaintiff "has applied at the Medi Weight Loss";[30] and (5) Harrell told Gamaras that "this is a small industry and that he would make sure that [Plaintiff] would never work in the industry again."[31] Additionally, Gamaras testified that in January, 2008, Harrell told her "that [Plaintiff] had gotten a job or – she had gotten a job at the Medi Weight Loss Clinic or was seeking a position there, and he made sure she didn't get it."[32] Gamaras reiterated her testimony that Harrell admitted interfering[33] in Plaintiff's job search: "He had told me that [Plaintiff] had applied at the Medi Weight Loss where Dr. Harrell used to be involved with and [Plaintiff] would no longer – or [Plaintiff] will not be in that position."[34]

Defendants stress that Gamaras's testimony about the January, 2008, admission is less than definitive and even inconsistent. However, when her testimony is construed with the other evidence, Harrel's statements provide support for an inference that Plaintiff had landed a job at Medi Weight Loss or would have obtained one had Harrell not "made sure [Plaintiff] didn't get it."

In short, if construed favorably to Plaintiff, the evidence was sufficient to support a rational finding by the jury as to both My Choice and Medi Weight Loss, of "an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had

---

[29] *See* Dkt. 101 at 188-89.

[30] Dkt. 101 at 232; *see also* Dkt. 101 at 231.

[31] Dkt. 101 at 189; *see also* Dkt. 101 at 234.

[32] Dkt. 101 at 190.

[33] *See* Dkt. 101 at 231.

[34] Dkt. 101 at 231.

9

not interfered." *Ethan Allen, Inc.*, 647 So. 2d at 814. Accordingly, Defendants are not entitled to judgment as a matter of law. Furthermore, the court is not persuaded that the verdict is against the great weight of the evidence.

Defendants also contend that a new trial is warranted because of newly discovered evidence. Defendants submit a July 8, 2009, declaration of Sharon DeLuca (Dkt. 98-2) stating that in April, 2007, Dr. Zbella offered and DeLuca accepted a position as office manager in Dr. Zbella's St. Petersburg office. Defendants argue that this evidence shows that (Dkt. 98 ¶ 8) "no opening existed at [Dr. Zbella's] . . . office for which Plaintiff could have applied or been hired" because "there is only one Office Manager position and Ms. DeLuca was already hired by the end of April 2007" for what Defendants describe as (Dkt. 100 at 4) "the exact same position for which Plaintiff claimed at trial she had two interviews with Dr. Zbella in May 2007." Defendants contend that DeLuca's statement therefore demonstrates the falsity of Plaintiff's trial testimony. Accordingly, Defendants request an evidentiary hearing at which they may present (a) unspecified evidence that Defendants expect or hope to discover in DeLuca's personnel file, which Defendants seek leave to obtain by subpoena, and (b) the testimony of Dr. Zbella. Additionally, Defendants seek leave to conduct post-trial discovery regarding certain emails (referred to in testimony of Joe Barbara that was proffered outside the presence of the jury and ruled inadmissible), although "Defendants do not believe [the] emails exist" (Dkt. 100 at 3), and to depose (Dkt. 100 at 5) "any witnesses, including those [who] testified at trial."

Defendants fail to show that the evidence in the DeLuca declaration could not have been discovered before trial through the exercise of diligence. Additionally, Defendants fail to demonstrate that the evidence would probably change the outcome. Plaintiff did not testify at trial

that the position she sought at Medi Weight Loss in May, 2007, was that of office manager. I an event, Plaintiff's April 18, 2008 deposition, a portion of which is filed as an exhibit to Plaintiff's response, demonstrates that when asked whether the position for which she was being considered at Medi Weight Loss was a "manager's job," Plaintiff replied, "No."[35] Although not introduced at trial, this testimony supports Plaintiff's argument that Defendants' contention that DeLuca obtained in April, 2007 "the exact same position for which Plaintiff claimed at trial she had two interviews with Dr. Zbella in May 2007" is mistaken.

Additionally, Defendants make no attempt to show that the evidence they hope to elicit from Dr. Zbella could not have been discovered before trial through the exercise of diligence. Defendants were aware of Plaintiff's claim that she sought employment with Dr. Zbella as early as Plaintiff's April 18, 2008, deposition,[36] long before the trial (during which Defendants unsuccessfully attempted to secure Dr. Zbella's testimony[37]). Although Dr. Zbella's testimony may have assisted the jury in determining whether or not Plaintiff was or would have been offered employment at Medi Weight Loss, the parties apparently assumed the risk of not deposing him and presenting his testimony at trial, as each party urged the jury to draw inferences from his absence unfavorable to the other.[38] Even now, Defendants' contention that Dr. Zbella's testimony would prove favorable to Defendants (*i.e.*, will tend to show that Plaintiff did not apply for or obtain a position at Medi Weight Loss) appears speculative at best. Defendants could have but did not discover through deposition or

---

[35] Dkt. 107-2 at 2.

[36] *See* Dkt. 100 at 1.

[37] *See* Dkt. 77; Dkt. 103 at 55.

[38] *See* Dkt. 101 at 167-68; Dkt. 104 at 70, 72, 86.

11

otherwise the substance of what Dr. Zbella could add to the facts in this case.

In sum, because Defendants fail to show that the claimed newly discovered evidence could not have been discovered before trial through the exercise of diligence and that it would probably change the outcome, Defendants' contentions do not warrant post-trial discovery.

Defendants' remaining contentions require little discussion. Much of what Defendants present is simply re-argument of the facts. As to their claim that insufficient evidence supports an award of damages for emotional distress, Defendants raised no objection to the sufficiency of the evidence supporting emotional distress damages in their Rule 50(a) motion. In any event, Plaintiff's testimony was sufficient to support the award. *See Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1349 (11th Cir. 2000) (noting that review of "'awards of compensatory damages for intangible, emotional harms is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses.'") (quoting *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999)).

Defendants' argument as to misconduct of opposing counsel is facially without merit. The jury was properly instructed to disregard hearsay elicited from Joe Barbara.[39] Defendant's argument assumes that the jury disregarded that instruction. A jury is presumed, however, to follow the court's instructions. *United States v. Siegelman*, 561 F.3d 1215, 1239 (11th Cir. 2009).

Plaintiff's testimony that she was excited and stopped her job search after her interview with Dr. Zbella was properly admitted as circumstantial evidence that an advantageous business relationship had begun between Plaintiff and Medi Weight Loss. Defendants' "double recovery" argument is facially without merit and was never urged as an argument at trial. Plaintiff presented

---

[39] *See* Dkt. 101 at 246-47, 249-50, 252; *cf.* Dkt. 101 at 259, 265.

a singular theory of liability premised on two distinct instances of interference. There was accordingly no double recovery. *See Hickson Corp. v. Norfolk Southern Railway Co.*, 260 F.3d 559, 567 (11th Cir. 2000).

Finally, Defendants present no justification for a remittitur. General compensatory damages, need not be proved with a high degree of specificity and may be inferred from the circumstances. *Bogle v. McClure*, 332 F.3d 1347, 1359 (C.A.11 (Ga.),2003)(citing *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir.1999)). A plaintiff may be compensated for intangible, psychological injuries, including humiliation and insult and a plaintiff's own testimony of embarrassment and humiliation can be sufficient to support an award for compensatory damages. Id. Here, the jury's award, including the award for past mental and emotional pain and suffering, was supported by the evidence, was not excessive and was not driven by undue prejudice.

### *Conclusion*

Upon consideration, Defendants' Amended Renewal of Its Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial and Request for Briefing Schedule (Dkt. 93), Defendants' Amendment to Its New Trial Motion and Request for Evidentiary Hearing (Dkt. 98) and Defendants' Motion to Issue Subpoenas and Conduct Discovery in Support of Their Application for a New Trial (Dkt. 100) are **DENIED**.

**DONE AND ORDERED** in chambers this 21st day of September, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record